UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE WEIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TIMBERLINE KNOLLS, LLC, | ) |
| and MARYELLEN MCKENNA, | ) |
| | ) |
| Defendants. | )     **JURY DEMAND** |

## COMPLAINT

Plaintiff, as a Complaint against Defendants, alleges the following:

## Nature of the Case

1.       This action is filed to enforce Plaintiff's workplace rights. Plaintiff's claims are brought under Title VII of the Civil Rights Act, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the American Recovery and Reinvestment Act, the Illinois Human Rights Act, and Illinois common law. Plaintiff was terminated from her employment at the Timberline Knolls residential treatment center because she was pregnant, and because her employer expected her to take a maternity leave. After her termination, her employer failed to provide notice of Plaintiff's right to continued health insurance coverage with a 65% premium reduction; thus, her health insurance terminated while she was pregnant. As vindication of her rights, Plaintiff seeks compensatory and punitive damages, statutory fines, injunctive and other equitable relief, and attorney's fees and costs.

**Jurisdiction, Venue, and Exhaustion of Remedies**

2.     The Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. §1331. Jurisdiction over her Title VII claim is also founded upon 28 U.S.C. §1343(a)(4) (civil rights) and 42 U.S.C. §2000(e)-5(f)(3). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims that they form part of the same Article III case.

3.     Venue is proper in this district pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000(e)-5(f)(3).

4.     Plaintiff invoked and exhausted all mandatory pre-complaint administrative procedures by timely filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on April 17, 2009. Plaintiff subsequently requested her Notice of Right to Sue, which was issued on June 22, 2010. True and correct copies of the Plaintiff's EEOC charge and right to sue notice are attached to this Complaint as Group Exhibit A.

5.     This Complaint is timely filed within 90 days of Plaintiff's receipt of the right to sue notice.

**Parties**

6.     Plaintiff Michelle Weis is a resident of Aurora, Illinois. From September 16, 2008 until February 12, 2009, Plaintiff was employed at a residential treatment facility operated by Defendant Timberline Knolls, LLC ("Timberline Knolls" or "Timberline").

7.     Defendant Timberline Knolls is a limited liability company that operates a residential treatment center in Lemont, Illinois for adolescent girls and women with eating disorders, drug and alcohol addiction, and other serious medical conditions. Timberline Knolls

2

employs, and at all relevant times did employ, more than fifteen (15) employees.

8.     Defendant MaryEllen McKenna is, and at all relevant times was, the director of human resources of Timberline Knolls. Defendant McKenna was the person responsible for the decision to terminate Plaintiff's employment.

**Factual Allegations**

**A.     Plaintiff's Hiring as a Behavioral Health Specialist**

9.     Plaintiff was hired by Timberline Knolls as a Behavioral Health Specialist (BHS) and began work on September 16, 2008. Plaintiff earned her undergraduate Bachelor of Arts degree in Human Services and Behavioral Sciences, and she took college-level courses in addictions counseling, eating disorders, and domestic violence. Plaintiff was well-qualified for the BHS position.

10.     Before being offered employment at Timberline Knolls, Plaintiff read claims about the facility's programmatic success rate that were posted on its website. These claims induced Plaintiff to accept Timberline Knoll's offer of employment. Later, after the Chicago Tribune raised questions about the claims, which medical experts had called misleading, Timberline Knolls removed the claims from its website.

11.     In order to accept the offer of employment at Timberline Knolls, Plaintiff resigned from a position as an admissions counselor and instructor at the National University of Health Sciences in Lombard, Illinois. Plaintiff loved her job there, which also paid substantially more than the pay she was being offered at Timberline Knolls. Nonetheless, Plaintiff accepted the position at Timberline Knolls because she hoped to use her skills to help adolescent girls with serious problems at what she had been led to believe was an especially effective treatment center.

**B.     Plaintiff's Work Performance and Pregnancy**

12.     Throughout her employment, Plaintiff was professional, devoted, enthusiastic, and well-liked by the girls and women in treatment (the "residents").

13.     Throughout her employment, Plaintiff performed her duties at or above her employer's legitimate expectations.

14.     After she was hired by Timberline Knolls, Plaintiff became pregnant. She had a history of pregnancy loss that was emotionally painful. Because of her pregnancy loss history, Plaintiff's pregnancy was carefully monitored by her physicians.

15.     In November 2008, Plaintiff was experiencing nausea and other pregnancy symptoms at work. She felt the need to disclose her pregnancy to the girls in treatment, so that they would not misconstrue her vomiting as signs of an eating disorder.

16.     Thus, around mid-November 2008, Plaintiff disclosed her pregnancy to both her direct supervisor, Elizabeth Whitehead, and to Defendant McKenna.

17.     When informed of Plaintiff's pregnancy, Defendant McKenna did not congratulate her or make any warm remarks.

18.     After disclosing her pregnancy, Plaintiff asked McKenna whether she would be allowed maternity leave, and McKenna stated that she could take short-term disability leave under Timberline Knolls's policy and that they would "most likely" have a position for her when she was ready to return to work.

**C.     The "No Fault" Unscheduled Absence Policy**

19.     Within a short time after Plaintiff informed Defendant McKenna of her pregnancy, Timberline Knolls adopted a "no call-off" policy. Under this "no-fault" policy,

4

Timberline Knolls employees--who worked in close quarters, in a residential treatment facility-- were subject to discipline for missing work due to illness.

20.     The "no-fault" absence policy had guidelines for escalating discipline.

21.     Under the policy that applied to absences for illness, for the first occurrence, employees were subject to a verbal warning; for the second occurrence, employees were subject to a written warning; for the third occurrence, employees were subject to a one-day suspension without pay and a written warning that the next occurrence "may" result in termination. Only on the fourth occurrence for absence due to illness were employees subject to termination for being absent from work; and even then, Timberline reserved the right to review "[e]ach individual situation" "prior to the final act of termination."

22.     Thus, under the Timberline Knolls attendance policy adopted in November 2008, unscheduled absences for illness provided a basis for termination only after the fourth occurrence.

23.     And under the same policy, an "occurrence" was defined as "one or more consecutive days." Thus, "[f]or example, if an employee is absent for two consecutive days, it will be considered one occurrence."

**D.     Plaintiff's Termination**

24.     In December 2008 and then again in January 2009, Plaintiff was ill and stayed home from work on her doctor's orders.

25.     On January 22, 2009, after the second "occurrence," Ms. Whitehead met with Plaintiff and issued her a written warning. The warning states: "Michelle called off again beginning January 6, 2009. According to company policy, this is considered her second

5

occurrence of absenteeism."

26. According to company policy, a third occurrence of unscheduled absence would result in a "[f]inal written warning and one-day suspension without pay."

27. According to company policy, a third occurrence of unscheduled absence would not result in termination.

28. Plaintiff did not receive any subsequent or final written warning for missing work.

29. Plaintiff was never suspended for missing work.

30. On February 5, 2009, Plaintiff was at work in the second trimester of her pregnancy, when she experienced vaginal bleeding. Plaintiff was frightened by the bleeding and went to the hospital for emergency medical treatment. She was instructed to stay off of work for one week, and to schedule an appointment with her obstetrician so that he could clear her return.

31. Thus, after her discharge, Plaintiff scheduled an appointment with her physician for Thursday, February 12, at 3:00 p.m. Then, she conveyed this information, including the date and time of her appointment, to Ms. Whitehead. Ms. Whitehead responded that the sick leave was "fine" and that Plaintiff should call after the appointment with her doctor to inform them whether she had been authorized to return to work. Ms. Whitehead said nothing about a violation of company policy or any discipline that would be imposed.

32. Plaintiff rested at home for a week, and the vaginal bleeding stopped.

33. On February 12, 2009, at around 1:00 p.m., two hours before Plaintiff's appointment with her physician, Defendant McKenna called Plaintiff at home and terminated her employment.

34. As reasons for her termination, McKenna stated that they felt it would be *best for Plaintiff* if she rested at home while pregnant; that Timberline could not wait around to find out what her doctor would say; that Plaintiff was going to take maternity leave, anyway, after her baby was born; and that they needed to fill her position.

35. Pleading for her job, Plaintiff reminded McKenna that she was seeing her doctor in just two hours and said that she was feeling fine and would be cleared to return to work. She also told McKenna that her husband had just lost his job and that they needed her income and benefits. She asked for a different position, if they needed to fill the job that she had. McKenna responded that she was sorry if the termination was an "inconvenience" for Plaintiff, but that they needed to fill her position and did not have another one for her. Thus, despite Plaintiff's pleas, and knowing that Plaintiff's family would have no means of financial support and that Plaintiff would lose her health insurance benefits while she was pregnant, McKenna persisted in terminating Plaintiff's employment.

**E.    Events After Plaintiff's Termination**

36. Plaintiff was terminated effective immediately. She was not allowed to return to work for a single shift. Consequently, she was unable to appropriately sever her therapeutic counseling relationship with the Timberline Knolls residents. These were girls with psychological and behavioral problems, and most of them struggled with abandonment issues. Now, the counselor with whom they had developed a therapeutic relationship had abruptly disappeared.

37. Failing to therapeutically terminate a counseling relationship is considered unethical.

7

38.     The fact that Plaintiff was being forced to "abandon" the residents without therapeutically terminating the counseling relationship caused her anxiety and emotional distress.

39.     Also, the termination of Plaintiff's employment while she was pregnant and the loss of her income and health benefits, and with them her family's financial security, caused Plaintiff severe anxiety and emotional distress. The emotional distress was so severe that Plaintiff sought treatment from a mental health professional.

40.     The emotional distress that Plaintiff suffered as a result of her termination posed a risk to her pregnancy.

41.     The emotional distress that Plaintiff suffered as a result of her termination was intensified by Defendant McKenna's statements to her while carrying out the termination. As an excuse for firing her, McKenna told Plaintiff more than once that "staying home" was the *best thing for Plaintiff*, thereby suggesting, absurdly, that Timberline Knolls was acting with Plaintiff's interests in mind. McKenna also referred to Plaintiff's termination as a mere "inconvenience." These comments were pejorative and outrageous.

42.     After her termination, McKenna sent Plaintiff an e-mail with information about public aid. She did not provide Plaintiff with any information about her right to continuing health coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

43.     Also, at no time after her termination was Plaintiff informed that she was eligible for a COBRA premium reduction under the American Recovery and Reinvestment Act of 2009 and that she could maintain her health benefits by paying only 35% of the COBRA premium.

44.     Because she was not informed of her COBRA rights as provided by law, Plaintiff believed that her only option for continuing health benefits was, as Defendant McKenna had

8

recommended, public aid. Thus, she applied for benefits under the Medicaid program.

45.     Plaintiff also applied for unemployment benefits, and Timberline Knolls contested her unemployment claim.

46.     In contesting Plaintiff's unemployment, McKenna told the Illinois Department of Employment Security (IDES) that Plaintiff "missed too much work" and was fired for violating the company's attendance policy.

47.     McKenna's statement to IDES was false. It was a pretext for discrimination based on sex and for interference with Plaintiff's right to short-term disability leave.

48.     During its adjudication of Plaintiff's application for unemployment benefits, IDES informed Plaintiff that Timberline was contesting her unemployment on the basis that she had "missed too much work" and had violated the company's attendance policy. This was the first that Plaintiff had heard the attendance policy raised in connection with her termination. By contrast, when McKenna fired Plaintiff she did not mention the attendance policy or allege that Plaintiff had "missed too much work."

49.     Plaintiff was shocked by the allegation that the termination was based on the attendance policy because that is not the reason that McKenna had given her for the termination. She was also shocked and perplexed by the allegation, because under the Timberline Knolls attendance policy, a third occurrence of documented illness did not result in termination.

50.     IDES rejected the contest to Plaintiff's unemployment claim, and she was granted unemployment benefits.

51.     The agent from IDES responsible for the adjudication of Plaintiff's unemployment claim told Plaintiff that her termination was probably discriminatory and illegal. She directed Plaintiff to the EEOC to file a pregnancy discrimination charge.

52.     Plaintiff filed her EEOC charge on April 17, 2009. The charge was cross-filed with the Illinois Department of Human Rights.

53.     After more than 180 days had passed since the filing of her charge, Plaintiff requested a right to sue notice from the EEOC. The EEOC issued the notice on June 22, 2010 but declined to close her file, determining instead that it would continue to investigate and process her charge. Thus, the EEOC investigation of Plaintiff's charge is ongoing.

54.     Defendants callously terminated Plaintiff's employment knowing that she had a history of pregnancy loss and that she had just suffered the frightening experience of second-trimester bleeding. They knew that her family had no other means of financial support and that she would be forced onto public aid.

55.     Plaintiff's termination was extreme and outrageous.

56.     Defendants were aware of Plaintiff's susceptibility to emotional distress and Defendants' conduct indeed caused Plaintiff severe emotional distress and put her pregnancy at risk.

57.     As a result of Defendants' discriminatory and outrageous conduct, Plaintiff has suffered damage to her career and professional reputation, lost wages and benefits, severe financial hardship, and severe mental anguish and emotional distress.

10

## COUNT I

## PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII
**(Defendant Timberline Knolls)**

58.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

59.     Title VII as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex; specifically, 42 U.S.C. §2000e(k), which codifies provisions of the Pregnancy Discrimination Act, makes it unlawful for an employer to discriminate against an individual in the terms, conditions, or privileges of employment on the basis of pregnancy.

60.     By its conduct as alleged herein, Defendant Timberline Knolls subjected Plaintiff to sex discrimination in violation of Title VII.

61.     Defendant's conduct toward Plaintiff illustrated a willful or reckless disregard of Plaintiff's right to be free from pregnancy discrimination.

62.     As a result of Defendant's conduct, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Timberline Knolls on Count I and that it:

a)     Declare that Defendant's conduct constitutes unlawful pregnancy discrimination in violation of Title VII of the Civil Rights Act;

b)     Award Plaintiff the value of the compensation and benefits lost as a result of Defendant's unlawful conduct;

c)      Order Plaintiff's reinstatement or, in the alternative, award her the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d)      Award Plaintiff damages for emotional distress and other compensatory damages;

e)      Award Plaintiff punitive damages;

f)      Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)      Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it from engaging in any unlawful employment practice;

h)      Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i)      Award Plaintiff any and all other relief as the Court deems just and proper.

## COUNT II

### DISCRIMINATION IN VIOLATION OF
### THE EMPLOYEE RETIREMENT INCOME SECURITY ACT
**(Defendant Timberline Knolls)**

63.      Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

64.      The Employee Retirement Income Security Act, specifically 29 U.S.C. §§1132 and 1140, makes it unlawful for an employer to discharge or otherwise discriminate against an

12

employee for the purpose of interfering with a right to which a participant may become entitled under an employee health or welfare plan.

65.     As a full-time Timberline Knolls employee, Plaintiff was entitled to receive the benefits of any employee benefit plan subject to ERISA, including maternal health benefits and short-term disability leave.

66.     By its conduct as alleged herein, Defendant Timberline Knolls discriminated against and discharged Plaintiff in violation of the Employee Retirement Income Security Act.

67.     Defendant's conduct towards Plaintiff illustrated, and continues to illustrate, a willful or reckless disregard of Plaintiff's rights under ERISA.

68.     As a result of Defendant's conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Timbereline Knolls on Count II and that it:

a)      Declare that Defendant's conduct is in violation of the Employee Retirement Income Security Act;

b)      Award Plaintiff the value of benefits lost as a result of Defendant's unlawful conduct;

c)      Award Plaintiff the value of benefits she will lose in the future as a result of Defendant's unlawful conduct, or in the alternative, reinstatement to Plaintiff's position before her unlawful discharge;

d)      Award Plaintiff pre-judgment interest;

e)      Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f)      Enjoin Defendant and all officers, agents, employees and all persons in active

13

concert or participation with it from engaging in any unlawful employment

practice;

g)     Enjoin Defendant and all officers, agents, employees and all persons in active

concert or participation with it to institute and carry out all policies and practices

to provide equal employment opportunities for all and to prevent discrimination;

and

h)     Award Plaintiff any and all other relief as the Court deems just and proper.

### Count III

### CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT (COBRA)
**(Enforced Through ERISA, 29 U.S.C. § 1132)**
**(Defendant Timberline Knolls)**

69.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth

herein.

70.     The Consolidated Omnibus Budget Reconciliation Act of 1986, specifically 29

U.S.C. §1161 et seq., requires that a "plan sponsor of each group health plan shall provide . . .

that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying

event is entitled, under the plan, to elect, within the election period, continuation coverage under

the plan."

71.     As a qualified beneficiary of the Timberline Knolls group health plan, Plaintiff

was entitled to elect continuation coverage.

72.     Defendant failed to provide Plaintiff with legally required notice of her COBRA

rights.

14

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Timberline Knolls on Count III and that it:

a)      Declare that Defendant's conduct is in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended;

b)      Award Plaintiff the value of benefits lost as a result of Defendant's unlawful conduct;

c)      Award Plaintiff the value of all statutory fines and/or penalties resulting from Defendant's unlawful conduct;

d)      Award Plaintiff pre-judgment interest;

e)      Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f)      Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it from engaging in any unlawful employment practice;

g)      Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h)      Award Plaintiff any and all other relief as the Court deems just and proper.

15

**Count IV**

**AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009**
**(Enforced Through ERISA, 29 U.S.C. § 1132)**
**(Defendant Timberline Knolls)**

73.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

74.     The American Recovery and Reinvestment Act of 2009 (ARRA), as amended, provides for premium reductions for health benefits under the COBRA. Under the ARRA, "assistance eligible individuals" pay only 35 percent of their COBRA premiums; the remaining 65 percent is reimbursed to the coverage provider through a tax credit.

75.     Because Plaintiff was involuntarily terminated between September 1, 2008 and May 31, 2010, Plaintiff was an "assistance eligible individual" under the ARRA, as amended.

76.     Through the actions described above, Defendant Timberline Knolls violated Plaintiff's rights under the ARRA.

77.     As a result of Defendant's conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Timberline Knolls on Count IV and that it:

a)     Declare that Defendant's conduct is in violation of the American Recovery and Readjustment Act, as amended;

b)     Award Plaintiff the value of benefits lost as a result of Defendant's unlawful conduct;

c)     Award Plaintiff the value of all statutory fines and/or penalties resulting from Defendant's unlawful conduct;

16

d)   Award Plaintiff pre-judgment interest;

e)   Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f)   Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it from engaging in any unlawful employment practice;

g)   Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h)   Award Plaintiff any and all other relief as the Court deems just and proper.

### Count V

**PREGNANCY DISCRIMINATION IN VIOLATION OF
THE ILLINOIS HUMAN RIGHTS ACT
(Defendant Timberline Knolls)**

78.   Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

79.   The Illinois Human Rights Act (IHRA), at 775 ILCS 5/2-102(B), makes it unlawful to discriminate against any individual in the discharge, terms, conditions, or privileges of employment on the basis of sex, including pregnancy.

80.   By its conduct as alleged herein, Defendant Timberline Knolls subjected Plaintiff to pregnancy discrimination in violation of the IHRA.

81.   Defendant's conduct toward Plaintiff illustrated a willful or reckless disregard of Plaintiff's right to be free from pregnancy discrimination.

17

82.     As a result of Defendant's conduct, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Timberline Knolls on Count V and that it:

a)     Declare that Defendant's conduct constitutes unlawful pregnancy discrimination in violation of the Illinois Human Rights Act;

b)     Award Plaintiff the value of the compensation and benefits lost as a result of Defendant's unlawful conduct;

c)     Order Plaintiff's reinstatement or, in the alternative, award her the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d)     Award Plaintiff damages for emotional distress and other compensatory damages;

e)     Award Plaintiff punitive damages;

f)     Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)     Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it from engaging in any unlawful employment practice;

h)     Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i)     Award Plaintiff any and all other relief as the Court deems just and proper.

18

## Count VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

83.    Plaintiff re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

84.    By its conduct as alleged herein, Defendants' behavior toward Plaintiff was extreme and outrageous, was intended to cause Plaintiff severe emotional distress, and did cause Plaintiff severe emotional distress.

85.    Moreover, Defendants were aware of Plaintiff's susceptibility to emotional distress when they took extreme and outrageous actions against her.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants on Count VI and that it:

a)    Declare that Defendants' conduct is in violation of Illinois state law;

b)    Award Plaintiff the value of compensation and benefits lost as a result of Defendants' unlawful conduct;

c)    Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

d)    Award Plaintiff damages for emotional distress and other compensatory damages;

e)    Award Plaintiff punitive damages;

f)    Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)    Enjoin Defendant and all officers, agents, employees and all persons in

active concert or participation with them from engaging in any unlawful

employment practice;

h)     Enjoin Defendants and all officers, agents, employees and all persons in

active concert or participation with them to institute and carry out all

policies and practices to provide equal employment opportunities for all

and to prevent discrimination; and

i)      Award Plaintiff any and all other relief as the Court deems just and proper.

## JURY DEMAND

86.     Plaintiff demands trial by jury on all claims and issues for which a jury trial is

allowed.

Dated:  September 17, 2010                     Respectfully submitted,

                                               /s/ Marni Willenson
                                               Marni Willenson
                                               Willenson Law, LLC
                                               542 S. Dearborn St., Suite 610
                                               Chicago, IL 60605
                                               312-546-4910 Tel
                                               312-261-9977 Fax
                                               Bar No. 6230365
                                               marni@willensonlaw.com

                                               Attorney for Plaintiff