# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE WEIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10 C 5935 |
| ) | |
| TIMBERLINE KNOLLS, LLC, ) | Magistrate Judge Sidney I. Schenkier |
| MARYELLEN MCKENNA, and ) | |
| CHC COBRASOURCE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

In her six-count first amended complaint, plaintiff Michelle Weis asserts a variety of federal and state law claims against Timberline Knolls, LLC ("Timberline"), MaryEllen McKenna, and CHC COBRAsource, Inc. ("COBRAsource") (doc. # 28: Compl.). In Count VI, Ms. Weis alleges a common law claim of intentional infliction of emotional distress ("IIED") against defendants Timberline and Ms. McKenna – but not against COBRAsource. Defendants Timberline and McKenna ("defendants") have moved to dismiss Count VI pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 19: Defs.' Mot. to Dismiss). For the reasons set forth below, defendants' motion to dismiss is denied.

## I.

When analyzing a motion for failure to state a claim upon which relief can be granted under Rule 12(b)(6), we construe the complaint "in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Estate of Davis v. Wells*

---

[1] On November 23, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c), this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 12).

*Fargo Bank*, – F.3d –, 2011 WL 93030, at *2 (7th Cir. Jan. 12, 2011). To determine if the allegations are sufficient to state a claim, a reviewing court must determine if they make the asserted claim "plausible on its face." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The plaintiff need not plead "detailed factual allegations." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[T]he plausibility standard is not akin to a probability requirement. . . . [T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. . . . [T]he court will ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949).

## II.

We summarize the material allegations of the complaint. Plaintiff learned she was pregnant shortly after beginning work as a Behavioral Health Specialist for Timberline from September 16, 2008 (Compl. at ¶¶ 10, 15). Because plaintiff had a history of pregnancy loss, her pregnancy was closely monitored by her doctors (*Id.* at ¶ 15). Around mid-November 2008, plaintiff disclosed her pregnancy to Elizabeth Whitehead, her direct supervisor, and to Ms. McKenna, Timberline's human resources director (*Id.* at ¶ 17). Plaintiff asked Ms. McKenna whether she would be allowed maternity leave (*Id.* at ¶ 19). In response, Ms. McKenna stated that plaintiff could take short-term disability leave, and that if she did so, Timberline would "most likely" have a position for her upon her return (*Id.*).

2

Shortly after plaintiff disclosed her pregnancy, Timberline adopted a "no call-off," or "no fault," absence policy (Compl. at ¶ 20). The policy provides, in relevant part, that employees would be subject to a verbal warning for the first "occurrence" (one or more consecutive days) of absence because of illness; a written warning for the second occurrence of absence; a one-day suspension without pay and a written warning that the next occurrence may result in termination for the third occurrence; and termination after the fourth occurrence of absence (subject to individual review prior to termination) (*Id.* at ¶ 22).

In December 2008, plaintiff fell ill and stayed home from work on her doctor's orders (Compl. at ¶ 25). Plaintiff fell ill again and stayed home from work beginning on January 6, 2009 (*Id.* at ¶ 26). On January 22, 2009, plaintiff received a written warning from Ms. Whitehead that she has had two occurrences of absenteeism (*Id.* at ¶ 26). Then, on February 5, 2009, plaintiff suffered second-trimester vaginal bleeding while at work and sought emergency medical treatment (*Id.* at ¶ 31). After being discharged from the hospital, she was instructed not to work for one week and to schedule an appointment with her obstetrician to clear her return to work (*Id.*). Plaintiff scheduled the appointment for 3:00 p.m. on February 12, 2010, and informed Ms. Whitehead that she would not be able to return to work until then (*Id.* at ¶ 32). Ms. Whitehead told plaintiff that her sick leave was "fine" and that she should call work after her next doctor's appointment to inform them whether she had been authorized to return to work (*Id.*). Ms. Whitehead did not mention that plaintiff's sick leave violated company policy, or that any discipline would be imposed due to her absence (*Id.*).

Plaintiff rested at home for one week, and the vaginal bleeding stopped (Compl. at ¶ 33). At about 1:00 p.m. on February 12, 2009, Ms. McKenna called plaintiff at home and terminated her employment (*Id.* at ¶ 34). Ms. McKenna stated that "they felt" it would be best for plaintiff if she

3

rested at home while pregnant, and that Timberline could not wait to find out what her doctor would say since plaintiff was going to take maternity leave eventually anyway, and they would need to fill her position (*Id.* at ¶ 35). Plaintiff pleaded to keep her job or be transferred to a different job because her husband was unemployed and she was afraid to lose her benefits (*Id.* at ¶ 36). She explained that she felt fine and would be cleared to return to work after her doctor's appointment that day (*Id.*). Ms. McKenna apologized to plaintiff for the "inconvenience" and terminated plaintiff effective immediately (*Id.* at ¶ 36).

As a behavioral therapist, plaintiff counseled adolescent girls and adult women with various psychological and behavioral problems (Compl. at ¶¶ 7, 37). Plaintiff alleges that she was not permitted to properly terminate her therapeutic relationship with her clients, who suffered from psychological and behavioral problems and abandonment issues, causing plaintiff anxiety and emotional distress (*Id.* at ¶¶ 37-39). In addition, plaintiff alleged that she suffered emotional distress from Ms. McKenna's "pejorative and outrageous" statements that staying home would be best for plaintiff and apologizing for the mere "inconvenience" (*Id.* at ¶ 42). The distress from her termination threatened her pregnancy, and plaintiff sought treatment from a mental health professional (*Id.* at ¶¶ 40-41).

Plaintiff also alleges that she suffered severe anxiety and emotional distress because of the loss of her income and health benefits and her family's financial security (Compl. at ¶ 40). In the twenty months after the termination, neither Ms. McKenna, Timberline, nor COBRAsource informed plaintiff of her right to continuing health coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA), including a 65 percent premium reduction, and plaintiff was not aware of this right (*Id.* at ¶¶ 43-45). Ms. McKenna only provided her with information about public aid,

4

which plaintiff applied for (*Id.* at ¶¶ 43, 46). Plaintiff also applied for unemployment benefits, and defendants contested her unemployment claim (*Id.* at ¶ 47). Ms. McKenna told the Illinois Department of Employment Security ("IDES") that plaintiff "missed too much work" and was terminated for violating the company's attendance policy (*Id.* at ¶ 48). IDES ultimately rejected defendants' arguments and granted plaintiff unemployment benefits (*Id.* at ¶ 52).

### III.

In Count VI of the Complaint, plaintiff alleges that Ms. McKenna and Timberline are liable for IIED because their behavior toward plaintiff was extreme and outrageous, they were aware of her susceptibility to emotional distress at the time, they intended to cause plaintiff severe emotional distress, and they did cause plaintiff severe emotional distress (Compl. ¶¶ 93-94). Defendants move to dismiss IIED claim on the grounds that the claim is preempted because it is "inextricably linked" to an alleged violation of the Illinois Human Rights Act ("IHRA"), which plaintiff asserts as the basis for her claim of pregnancy discrimination in Count V (Defs.' Mot. at 2). In the alternative, defendants argue that the IIED claim must be dismissed for failure to state a claim (Defs.' Mot. at 2). In their reply, defendants further argue that the IIED claim is preempted by ERISA (doc. # 26: Defs.' Reply at 4-5). We address, and reject, each of these arguments in turn.

### A.

The IHRA states that: "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS § 5/8-111(C). The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (citing 775 ILCS § 5/8-111(C)). Unlawful employment discrimination, sexual harassment,

5

and retaliatory discharge are civil rights violations under the IHRA. 775 ILCS §§5/2-102(A), (D); 775 ILCS § 6-101(A).

Both the Illinois Supreme Court and the Seventh Circuit have addressed the scope of IHRA preemption. In *Geise v. Phoenix Company of Chicago, Inc.*, 639 N.E.2d 1273 (Ill. 1994), the Illinois Supreme Court held that the plaintiff's negligent retention and negligent hiring claims against her employer were preempted by the IHRA. In that case, the court explained that preemption applied because the plaintiff's negligence claims were "inextricably linked" to the sexual harassment claims against the plaintiff's supervisor, such that the plaintiff would have "no independent basis for imposing liability" on her employer apart from her civil rights action. *Id.* at 1277.

In *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997), the Illinois Supreme Court clarified the scope of its holding in *Geise* as it related to "tort claims which, though related to sexual harassment, have an independent basis in the common law." In *Maksimovic*, the Supreme Court held that whether a claim is preempted by the IHRA "depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* at 23. In that case, the plaintiff's claims of assault, battery, and false imprisonment were not inextricably linked to her claim of sexual harassment because the plaintiff had alleged sufficient facts to establish the elements of those tort actions irrespective of whether those alleged facts also breached any legal duties created by the IHRA. *Id.* at 22-23.

The Seventh Circuit most recently weighed in on the issue of IHRA preemption in *Naeem*. In that case, the appeals court explained the IHRA preemption rule as follows:

> The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because

6

the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.

*Id.* at 604 (internal citations and quotations omitted). The Seventh Circuit observed that the application of *Maksimovic* had led to sometimes inconsistent results in the courts in this district: "despite *Maksimovic*'s holding that preemption should rest on an examination of legal duties, not on the factual basis of claims, district courts have found IHRA preemption of an intentional infliction of emotional distress claim when a plaintiff alleged the same conduct to support intentional infliction of emotional distress as was alleged to support a claim of disability, racial or sexual harassment." *Naeem*, 444 F.3d at 603 n.4. The appeals court cited with approval district court cases which "correctly looked to the source of the legal duty in determining preemption," rather than to the factual allegations giving rise to the claim. *Id.* In the context of the IIED claim at issue in *Naeem*, the Seventh Circuit explained that "discrimination and intentional infliction of emotional distress are different wrongs, and so torts that do not depend on a civil rights violation are not preempted." *Id.* at 604 (internal quotations omitted). In that case, the plaintiff's IIED claim was not preempted because her allegations could prove the elements of that claim independent of the civil rights violations covered by the IHRA. *Id.* at 605-06.

Most recently, in *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009), the Illinois Supreme Court held that the plaintiff's common law retaliatory discharge claim was not inextricably linked to a civil rights violation, because the plaintiff "established a basis for imposing liability on defendants independent of the Act." The Supreme Court reaffirmed its holding in *Maksimovic* that preemption should be determined by examining the source of the legal duty underlying the claim: "plaintiff's allegation that she was discharged in retaliation for her refusal to commit perjury could . . . be

construed as retaliation for opposing unlawful discrimination – a violation of the Act's retaliation provision . . . . [H]owever, plaintiff need not and does not rely upon the public policy embodied in the Act to satisfy the elements of her common law tort claim." *Blount*, 904 N.E.2d at 10.

Applying the analysis endorsed by the Seventh Circuit in *Naeem*, which is consistent with the approach endorsed by the Illinois Supreme Court's in *Blount*, plaintiff's IIED claim is not preempted by the IHRA. To be sure, the fact that the plaintiff here was terminated while she was pregnant has led plaintiff to assert a violation of the IHRA's prohibition on pregnancy discrimination. But, plaintiff "need not and does not rely upon the public policy embodied in the Act" to satisfy her IIED claim. *Blount*, 904 N.E.2d at 10. Even if the IHRA did not prohibit pregnancy discrimination, defendants' course of conduct would be actionable if plaintiff can prove all of the elements of IIED.

What's more, plaintiff asserts not only the fact of her alleged termination as a basis for her IIED claim, but she also bases her IIED claim on the timing of her termination, the way in which it was carried out, and subsequent conduct by defendants. Plaintiff alleges that gratuitously and intentionally hurtful statements were made during the telephone call that informed plaintiff of the termination. And, she alleges that after the termination, she was deprived of the chance to properly disengage from the therapeutic relationship she had established with her clients. For this reason as well, plaintiff could "establish a basis for imposing liability on defendant[s] independent of any statutory cause of action under the Act." *Maksimovic*, 687 N.E.2d at 24. Accordingly, plaintiff's IIED claim is not preempted by the IHRA.[2]

---

[2]We have considered defendants' citation to *Quantock v. Shared Mktg. Services, Inc.*, 312 F.3d 899 (7th Cir. 2002), but conclude that it does not alter the Court's analysis. In *Quantock*, the appeals court reasoned that the IIED claim was preempted by the IHRA because it was "supported by factual allegations identical to those set forth in [the]

8

**B.**

Defendants also argue that plaintiff's IIED claim should be dismissed for failure to state a claim. To establish an IIED claim under Illinois law, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to cause or was aware of a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause such distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2007) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

Defendants challenge the sufficiency of plaintiff's allegations only as to the second element of an IIED claim, intent to cause emotional distress (Defs.' Mem. at 5).[3] Specifically, defendants contend that plaintiff "has pled herself out of court" by alleging that Ms. McKenna stated that plaintiff's employment was being terminated because "they felt it would be best for Plaintiff if she rested at home while pregnant" (*Id.* (citing Compl. at ¶ 34)). Defendants argue that "[a]ssuming this allegation is true, as is required for this motion . . . Timberline could not have intended to inflict severe emotional distress because it in fact intended to act in Plaintiff's best interests" (Defs.' Mem. at 5).

---

Title VII sexual-harassment claim." *Id.* at 905. This approach to IHRA preemption appears on its face to be at tension with the approach endorsed in *Naeem*. In making this observation, we are mindful that two members of the panel that decided *Quantock* (Judges Ripple and Kanne) also were members of the *Naeem* panel – including *Naeem*'s author, Judge Ripple. In addition, *Naeem* cited to *Quantock*, 444. F.3d at 604, but did not discuss how the two decisions should be reconciled.

Given that *Naeem* stands as the Seventh circuit's most recent articulation of the standard by which to assess claims of IHRA preemption, and is consistent with the most recent Illinois Supreme Court pronouncement on the subject, we follow the *Naeem* analysis here. We also point out that application of *Quantock* would not alter the outcome on this motion to dismiss because, as we have explained above, plaintiff's IIED claim does not rest solely on factual allegations "identical" to those underlying her IHRA claim.

[3]Defendants do not argue on this motion that plaintiff's allegations fail to plead that defendants' conduct was extreme and outrageous (*see* Defs.' Reply at 10).

Defendants' argument takes an implausible reading of the complaint. While a plaintiff can plead herself out of court by pleading facts that show that she has no legal claim, *Atkins v. City of Chicago*, – F.3d –, 2011 WL 206155, at *7 (7th Cir. Jan. 25, 2011), plaintiff here has done nothing of the sort. Far from alleging that defendants in fact "felt it would be best for Plaintiff if she rested at home while pregnant," plaintiff instead contends that this representation by Ms. McKenna was a "pejorative and outrageous" excuse for firing her, which caused her emotional distress (Compl. at ¶ 42).

Indeed, in the same paragraph of the complaint in which plaintiff alleges that Ms. McKenna said it would be best for plaintiff to rest at home, plaintiff also alleges that Ms. McKenna said that plaintiff was being fired because "Timberline could not wait around to find out what her doctor would say; that Plaintiff was going to take maternity leave, anyway, after her baby was born; and that they need to fill her position" (Compl. at ¶ 35). Read in context, it is evident that plaintiff is not alleging that defendants fired her out of a genuine concern for her well being.

The Seventh Circuit has held that a plaintiff can establish intent by her employer to cause her emotional distress where the employer knew of the plaintiff's particular susceptibility to emotional distress as a result of her pregnancy. *See Naeem*, 444 F.3d at 606; *see also Patterson v. Xerox Corp.*, 901 F. Supp. 274, 279 (N.D. Ill. 1995); *Wall v. Pecaro*, 561 N.E.2d 1084, 1088 (1st Dist. 1990). Like the plaintiff in *Naeem*, plaintiff here was pregnant throughout the events alleged. Defendants not only knew that she was pregnant, but they knew that plaintiff had a history of pregnancy loss and had just suffered second-trimester bleeding. Further, plaintiff alleges that defendants knew the time and date of her doctor appointment following her second-trimester bleeding, yet Ms. McKenna called her just two hours before the appointment and terminated her effective immediately. Plaintiff's

allegations are sufficient to plead the intent element of an IIED claim. *See Naeem*, 444 F.3d at 606 (holding that sufficient evidence was presented to the jury that defendants intended to cause emotional distress because defendants took actions against the plaintiff such as criticizing her work, moving her office, making her climb a ladder, and sabotaging her computer, and they knew that she was particularly susceptible to emotional distress because she was pregnant).

## C.

Lastly, in their reply, defendants argue that plaintiff's IIED claim is preempted by ERISA.[4] ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Defendants argue that ERISA preempts plaintiff's claim that defendants are liable for IIED for their failure to inform her of her COBRA rights (Defs.' Reply at 4). Plaintiff, however, does not allege that defendants caused her emotional distress through their failure to inform her of her benefits under COBRA. Notably, plaintiff does not bring her IIED claim against COBRAsource (*see* Compl. at ¶ 92). In addition, while plaintiff alleges several factors which caused her severe emotional distress – including her distress over losing her income and health coverage (*Id.* at ¶¶ 39-42) – she does not allege that the failure to inform her of her rights under COBRA caused her emotional distress. Thus, as pled, plaintiff's IIED claim does not have a "connection with" or "reference to" an employee benefit plan, as necessary for ERISA preemption to apply. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997).

---

[4]Although defendants did not raise this argument until their reply memorandum, the argument is not waived because ERISA's complete preemption affects this Court's subject matter jurisdiction. *See Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).

11

## CONCLUSION

For the foregoing reasons, we deny defendants' motion to dismiss Count VI (doc. # 19).

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: February 17, 2011